| 20 | 531 |
| 86 | 495 |
| 20 | 531 |
| 123 | 750 |
| 20 | 531 |
| 126 | 350 |

No. 94.—JOHN P. GAULDIN, plaintiff in error, *vs.* HENRY D. SHEHEE, defendant.

[1.] The terms of the Supreme Court being fixed by Statute, it is the duty of parties, as well as the Courts, to know and observe them.

[2.] The constitutionality of the Act of the Legislature of 1855–'6, making the bill of exceptions, as therein prescribed, the writ of error in the case, *affirmed.*

[3.] A plea of partial failure of consideration, in certain cases, allowed by the Act of 1836.

[4.] The fraudulent misrepresentation of the vendor, as to the quantity of his river bottom land, which constituted a material inducement to the trade, and which the vendee was prevented by high water from examining, will entitle the purchaser to relief.

Assumpsit, in Decatur.   Tried before Judge ALLEN, April Term, 1856.

Henry D. Shehee brought an action of assumpsit against John P. Gauldin, for the recovery of the sum due upon a note made payable to the former by the latter, for the sum of $2500.

To this action, besides the plea of the general issue, there were several pleas of partial failure of consideration filed, the substance of which was, that on the 6th day of March, 1854, defendant purchased of plaintiff certain described lots of land in said county, consisting of some 1367½ acres, for the sum of $7.500; that the note sued on was given as a part of the purchase money; that at and before the time of the purchase, plaintiff represented to defendant that said lots contained five hundred acres of river bottom land, which was then covered with the water of the river; that these representations were untrue in point of fact, and that plaintiff well knew the same to be untrue at the time he made them, but that defendant, relying solely upon said representations, believing them at the time, and not being able to measure the land on account of the water, confirmed the purchase; that the river bottom land does not exceed three hundred acres, and that the difference in value between the river bottom and the remainder of said body of land is ten dollars per acre; and that the quantity of said bottom land so represented, was the inducement to the defendant to make the contract, &c.

It is further alleged, that the plaintiff resides out of the State.

At the April Term the case was called for trial, and defendant moved a continuance, based upon the following showing, under oath, to-wit: that one Joseph Gray was present

at the time of the treaty and sale of the lands mentioned in defendant's pleas, and by whom he expected to prove the facts substantially as set forth in his pleas of partial failure, and who had been subpœnaed whilst a resident of the county, but since the last term of the Court had removed to the State of Alabama.　To this was added the usual formal showing.

Defendant moved to continue upon a further ground: to file his bill in Equity as a means of more ample redress, upon the facts stated in the pleas.

The Court over-ruled the motion—

1st.　Because "the plea of a partial failure of consideration, was not sustainable in this case, because the plea of total failure of consideration could not be sustained."

2d.　Because defendant ought to have filed his bill before.

The cause proceeded to trial; plaintiff offered the note sued on in evidence and closed.　Defendant then introduced evidence for the purpose of showing that the appeal entered by him was not frivolous and done for delay.　After which, the Court charged the Jury, that the only question about which there was any contest, was the damages for frivolous appeal, and referred them to the law applicable to the case.

The Jury having retired, returned a verdict for principal, interest, cost of suit, and ten per cent. damages.

Counsel for defendant thereupon moved the usual rule to set aside said verdict and grant a new trial, upon several grounds, among which were these: that the verdict was contrary to law and evidence and to the charge of the Court. The 6th ground is, that said Court erred in refusing defendant's motion for a continuance.

The Court refused the motion, and Counsel for defendant excepted and assigns the same as error.

When this cause came up for argument before the Supreme Court, Counsel for defendant in error made a motion to dismiss the same on two grounds, to-wit:

1st.　Because, in the bill of exceptions and the Judge's certificate, the case was made returnable to the "next *July Term* of the Supreme Court of said State to be held in the

City of Macon, on the *fourth* Monday in *July* next," when there is no such term of said Court.

2d. Because the case was not brought up to said Supreme Court by such a writ of error as the Constitution of the State requires; that the bill of exceptions and the certificate and order of the Judge in the Court below, requiring the Clerk of that Court to send up the record, &c. in pursuance of the Act of the last Legislature in relation thereto, did not, when taken together, constitute a writ of error, the said Act being in violation of the Constitution.

J. E. BOWER, for plaintiff in error.

S. T. BAILEY, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] 'Counsel for the defendant in error moved to dismiss this case upon two grounds: 1st. Because it is made returnable to the 4th Monday in July, instead of June; and 2dly. Because there is no writ of error.

The Act of the last Legislature disposes of the first objection, by declaring that no objection shall be taken or allowed to the manner in which any case has been brought up to this Court, *provided* the previous provisions of the Act have been substantially complied with. (*Pamphlet Acts, p.* 200.)

Now the previous provisions referred to are to be found in the 5th section; and it is there declared that the bill of exceptions shall be returned to the next term of the Supreme Court for the district, provided it does not sit within fifteen days from the time the same was filed in the Clerk's office; and if within a shorter period, to the next term of said Court held thereafter.

Now this provision of the Act having been complied with, the exception cannot be allowed. The times appointed for the terms of this Court are fixed by law; and parties as well as the Court are bound to know and observe them.

[2.] Is the bill of exceptions, as at present framed, a writ of error? If it is not, the case must be dismissed, because the Constitution ordains that the trial and determination of causes from the Superior Courts shall be by writ of error; and the Constitution must be preserved inviolate.

There are certain terms used, both in the State and Federal Constitutions, which have a definite, technical meaning, and must be construed accordingly : such as the writ of *habeas corpus, &c.* Is this true of the writ of error?

What is a writ of error? It is defined to be " an original writ issuing out of Chancery, and lies where a party is aggrieved by any error in the foundation of the proceeding, judgment or execution of the suit in a Court of record; and is in the nature of a commission to the Judges of the same or a Superior Court, by which they are authorized to examine the record upon which the judgment was given ; and on such examination, to affirm or reverse the same according to law. (2 *Tidd's Practice*, 1134.)

It is apparent that this Common Law writ is not that which is intended by the Constitution. We have, in Georgia, no Court of Chancery, proper, out of which such a writ could issue.

If it be said that this power devolves upon the Judges of the Superior Courts under our system, it is a conclusive reply to suggest, that upon those very Judges this power is conferred by the Act of 1855 –'6.

But in the opinion of this Court, the Constitution intended by the writ of error to designate merely the process by which cases were to be brought from the Superior Courts to this Court, to be reviewed.

By the Act of the last Legislature, it is declared that when any party is dissatisfied with any decision made by any of the Judges of the Superior Courts of this State, such party may carry the case in which said decision is made, to the Supreme Court, under the following rules and regulations :

" The party complaining of such decision shall make out a bill of exceptions and present it to the Judge making the de-

cision within thirty days after the adjournment of the Court; at which said decision was made; and if such decision was made at Chambers, within thirty days after such decision was made: and it shall be the duty of the Judge to certify and sign, or refuse to sign, the said bill of exceptions within two days after the same shall be presented to him, or shall come to hand."

" The certificate and order of the Judge, which shall be signed by him, shall be substantially as follows: "I do certify that the following bill of exceptions is true, and contains all the evidence material to a clear understanding of the errors complained of; and the Clerk of the Superior Court of the county of —— is hereby required and ordered to make out a complete copy of the record of the case and to certify the same to be transmitted to the —— term of the —— of the Supreme Court, that the errors alleged to have been committed may be considered and corrected—and which shall be the writ of error in the case." (*Pam. Acts* '55–'6, *pp.* 199, 200.)

And why, we ask, should it not be ? Why not the power exercised by the King through his Chancellor in England, be delegated by the State to the Judges of the Superior Courts here? We see no reason ; and if this were a doubtful question, it becomes our duty to affirm the constitutionality of the law.

Let us next proceed to examine this case upon its merits.

[3.] [4.] The plaintiff in error, Gauldin, purchased of the defendant a tract of land consisting of upwards of 1300 acres, for which he was to pay him $7.500. The note sued on was in part payment. He alleges in his plea that before and at the time of the trade, the vendor represented the tract to contain 500 acres of river bottom ; that this bottom land constituted the principal inducement to make the purchase ; that it was covered with water at the time of the trade, so as to prevent him from making any examination or measurement; that relying solely on the representation of the seller, he made the contract; that it turns out that there are but 300 acres of bottom land, which the vendor well knew at the time, but

which he falsely and fraudulently misstated; and that he had a witness who was present at the time, by whom he could establish his defence, but that after being subpœnaed to attend the Court, he had removed to Alabama; that he expected to procure the benefit of his testimony at the next term, and that the showing was not made for delay.

The presiding Judge refused to continue the case, upon the ground that if the proof was present, it could not be introduced to sustain the plea, inasmuch as a plea of partial failure of consideration was not authorized by law.

That the Judge mistook the law there can be no doubt. It is represented in the argument, and no doubt correctly, that he was misled in doing so by the *obiter* construction put upon the Act of 1836 in *McKnight vs. Kellett*, (9 *Ga. Rep.* 532.) That construction was over-ruled by this Court in *Simmons vs. Blackman*, (14 *Ga. Rep.* 318,) and repeatedly since. That the defence set up is available if it can be made out by satisfactory proof there can be no doubt. (*Adams' Equity*, 177, and notes.)