## 46440. FIRST NATIONAL BANK OF ATLANTA v. STEPHENS et al.

WHITMAN, Judge. This appeal arises out of an action in which the plaintiff alleged that the defendant bank was negligent in allowing an unauthorized person to withdraw the plaintiffs' savings from the defendant's bank. The case was tried without a jury and resulted in a judgment for the plaintiffs. The appellant bank contends that the trial judge erred (1) in denying its motion for an involuntary dismissal made at the close of plaintiffs' case and at the close of all the evidence; (2) in finding that it was negligent; and (3) in awarding judgment against it.

The evidence is that the plaintiffs' home was burglarized sometime between 1 p.m. on December 15, 1969, and 12:30 a.m. on December 16, 1969; and that on December 16, 1969, some unknown person, holding himself out to be plaintiff Willie Stephens, made two withdrawals at two separate locations from plaintiffs' savings account. On each occasion the unknown person presented the stolen savings account card (which exhibits the account holder's signature and account number), along with a withdrawal slip. A withdrawal slip must be signed. The two withdrawal slips in evidence were signed "Willie Stephens," but the plaintiff testified that they were not his signatures. Plaintiffs' signatures, in addition to appearing on the savings account card, were also on file with the bank on what is commonly called a "signature card" which was made when the account was first opened.

When the account was opened the plaintiffs agreed to the rules and regulations of the bank and acknowledged receipt of a copy of same. Rule 5 provides: "Accounts will be represented by a savings account card. The bank will not be required to permit withdrawals unless the savings account card is presented at the time the withdrawal is requested. Every effort will be made to protect depositors against loss, but payment made to a person presenting the savings account card shall be good and valid on account of the owner unless such savings account card has been lost and notice in writing has been given to the bank before such payment is made."

With regard to events following the burglary, Stephens testified that they immediately discovered that such items as a TV set, towels and shower curtains were missing but did not discover until two days later, when they were preparing to do Christmas shopping, that their savings account card was missing. They immediately notified the bank. *Held:*

The defendant bank contends that the rule of the bank above set forth required a judgment in its favor; that it constituted a binding contract between the parties which addressed itself to the very event which occurred, i.e., it had paid out the money to a person possessing the card before receiving notice that it had been stolen. Heavy reliance is placed upon *Langdale v. Cit-*

*izens Bank of Savannah,* 121 Ga. 105 (48 SE 708, 69 LRA 341, 104 ASR 94, 2 AC 257), wherein it was held that the reasonable rules of a bank to which the depositor assents are binding, and that a rule almost identical to the one in the case sub judice was reasonable and binding. The *Langdale* case is in conformity with the law in most other jurisdictions with respect to the effect of bank rules generally, and also with respect to the particular rule here involved. But it is also the majority rule that such a rule does not operate to discharge a bank for its negligence; that a bank has a duty to exercise due care and diligence in making payments from a savings account and may be held liable for failure to comply with that duty. Annot. 60 ALR2d 721. The *Langdale* case does not hold otherwise: "Of course a savings bank would be liable if its officers or employees should negligently or recklessly pay out money to one not entitled to receive it . . ." (p. 109), nor does *Wilson v. Citizens & Southern Bank,* 23 Ga. App. 654 (99 SE 239). The principle is one founded upon public policy. 10 AmJur2d 511, Banks, § 535. And see Uniform Commercial Code, § 4-103 (1).

The evidence was that bank procedure was to make signature comparisons between the withdrawal slip, the savings account card and the signature card. But the evidence is silent as to whether this procedure was in fact followed in this case, except that to the extent that the custom was shown we might presume as much. The complaint alleged negligence. The trial judge as trior of the fact had the withdrawal slips and the signature card before him. He found: "[T]his does not appear to me to be a clever facsimile of the depositor's signature, it shows some discrepancies." He found in effect that the bank had negligently paid out plaintiffs' money to an unauthorized person. We can not say here that the evidence did not authorize the trial judge's finding.

*Judgment affirmed. Hall, P. J., and Eberhardt, J., concur.*
Argued September 16, 1971—Decided October 5, 1971.

*Hansell, Post, Brandon & Dorsey, Jefferson D. Kirby, III,* for appellant.
*Joseph J. Anthony,* for appellees.

EBERHARDT, Judge, concurring. Because of the rule that if there is any evidence to support the finding we have no power to set it aside on the general grounds, I must concur. An examination of the record in *Langdale v. Citizens Bank of Savannah*, 121 Ga. 105 (48 SE 708), wherein repose the original documents carrying the admittedly genuine and the questioned signatures, discloses that there are dissimilarities in the genuine and the questioned signatures which are greater, more obvious and more numerous than are to be found in the signatures in this record. In that case it appears that the teller did not, when taking the check (or receipt) for withdrawal of funds, make a comparison of the signature with the one held in the bank files, while here it was done and, additionally, identification was obtained through the production of two credit cards issued to the depositor. Affirming a jury verdict in favor of the bank in *Langdale* the court observed that "it is obvious that the signatures bear a general similarity to each other," and thus that there "seems to have been absolutely nothing to put the teller on inquiry as to the genuineness" of the signature, and "under these circumstances we can not hold that it was his duty to go further and compare his signature with that of the plaintiff on file with the bank." The bank had exercised ordinary care, and the depositor was bound by the terms of the bank regulation— which was exactly the same as the regulation here involved. But in *Langdale* the jury had found for the bank, thus having found that it exercised ordinary care in permitting the withdrawal. Here the factfinder has found against the bank, and thus has found that it did not exercise ordinary care. We can not disturb the finding, however much it may appear to us that the evidence showing exercise of ordinary care was stronger here than it was in *Langdale*, for we deal only with the general grounds. It can not be said that the evidence here *demanded* a contrary finding, for there are *some* dissimilarities in the signatures and there is thus *some* evidence to support the finding made. *Adler v. Adler*, 207 Ga. 394, 405 (61 SE2d 824).