## 76880. HYER v. CITIZENS & SOUTHERN NATIONAL BANK IN MACON et al.
### (373 SE2d 391)

McMurray, Presiding Judge.

Richard E. Hyer, Jr. ("plaintiff") brought an action against the Citizens & Southern National Bank in Macon ("C & S") to recover damages for "breach of contract" and, alternatively, "conversion," alleging that C & S wrongfully distributed funds from plaintiff's savings account to his then wife, Mary M. Hyer. C & S admitted that it disbursed $8,500 to Ms. Hyer from a "market investment account" which provided "that only the Plaintiff could withdraw funds from the account," but denied liability for the alleged wrongful distribution, asserting ratification and "estoppel" based on a divorce settlement agreement entered into between plaintiff and his then wife, Mary M. Hyer, wherein the parties resolved disposition of their assets, including the funds which were the subject of C & S's alleged unauthorized distribution. C & S then asserted a counterclaim, seeking damages under OCGA § 9-11-14 for plaintiff's alleged "frivolous and groundless" complaint. Simultaneously, C & S filed a third-party complaint against Ms. Hyer for indemnification of "all sums that may be adjudged against [C & S] in favor of the Plaintiff. . . ." Ms. Hyer answered and admitted that she withdrew $8,500 from plaintiff's savings account, "but for clarification [she alleged] that she was entitled to withdraw this money . . . because the account and the money therein belonged to her as well as to [plaintiff]." Ms. Hyer further defended, alleging that she "was not unjustly enriched because . . . [plaintiff] ratified her actions in withdrawing the money by virtue of the [divorce settlement] agreement entered into between the parties. . . ."

Ms. Hyer, as third-party defendant, then asserted a "crossclaim" in four counts against plaintiff, seeking in Counts 1 and 2 "compensatory damages," "exemplary damages," "attorney's fees and costs" based on what appears to be an action for "abusive litigation."[1] In Count 3, Ms. Hyer seeks indemnification "for all sums that may be adjudged against [her] in favor of [C & S]"; and, in Count 4, she contends that plaintiff "is in willful and intentional contempt . . ." of their final decree of divorce, alleging that "plaintiff is interfering, molesting, and harassing [her] by attempting to indirectly obtain money from her by suing [C & S] for monies which have been determined to belong to [Ms. Hyer], knowing that [C & S] would seek payment from her and make her a party to the lawsuit. . . ."

Plaintiff filed a motion for summary judgment in his favor as to

---

[1] See *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414).

the main complaint and additionally plaintiff moved the court "to dismiss the third-party defendant's [Ms. Hyer's] cross-claim." Defendant C & S then moved for summary judgment in its favor.

After considering "the briefs, affidavits and arguments of counsel," the trial court denied plaintiff's motion for summary judgment and motion to dismiss third-party defendant's (Ms. Hyer's) claim against plaintiff and granted C & S's motion for summary judgment. Plaintiff now appeals. *Held*:

1. Plaintiff first contends the trial court erred in granting C & S's motion for summary judgment, arguing that C & S is liable to him for deducting $8,500 from his savings account and disbursing this amount to his former wife.

"[A] bank has a duty to exercise due care and diligence in making payments from a savings account and may be held liable for failure to comply with that duty. Annot. 60 ALR2d 721." *First Nat. Bank of Atlanta v. Stephens*, 124 Ga. App. 530, 532 (184 SE2d 484). In the case sub judice, there is no doubt that a genuine issue of material fact remains with regard to the diligence and care C & S employed in disbursing $8,500 to Ms. Hyer and debiting plaintiff's "money market account" for the same amount. Nonetheless, C & S defends its actions, arguing that plaintiff ratified its alleged wrongful act by settling the dispute over the $8,500 with his former wife.

"A ratification by the principal relates back to the act ratified, and takes effect as if originally authorized. Civil Code (1910), § 3591 [now OCGA § 10-6-52]; *Todd v. German-American Insurance Co.*, 2 Ga. App. 789 (3), 798 (59 SE 94)." *Roberts v. Bank of Eufaula*, 20 Ga. App. 221, 223 (1), 224 (92 SE 1015). " 'It is not requisite to the ratification of another unauthorized act of one assuming to act as the agent of another that the acquiescence should be in express terms. In most cases such ratification can be implied from the acts and conduct of the principal. As a general rule, if the principal, with full knowledge of all the material facts, accepts and retains the benefits of the unauthorized act, he thereby ratifies the act. Of course, as stated, ratification necessarily implies complete knowledge of all the material facts relating to the transaction.' [*Roberts v. Bank of Eufaula*, 20 Ga. App. 221, 226 (3), supra.]" *Liberty Mut. Ins. Co. v. Lipscomb*, 56 Ga. App. 15, 21 (2), 25 (192 SE 56).

In the case sub judice, there is no question that plaintiff had full knowledge of his former wife's unauthorized withdrawal of $8,500 from his "money market account" at the time he entered into the divorce settlement agreement with her on July 22, 1986. It is also undisputed that plaintiff and Ms. Hyer agreed in their property settlement agreement that "all personal property in [Ms. Hyer's] possession and control or in [her] name was to be and become [her] sole and separate property, free and clear of any claims of [plaintiff] whatso-

ever. This included . . . the $8,500 which [Ms. Hyer] withdrew from the Market Investment Account at C & S." Consequently, since plaintiff knowingly received the benefit of his former wife's withdrawal, he cannot now claim that her withdrawal was unauthorized. "Under our view of the law of the case, the plaintiff could not receive a substantial benefit from the unauthorized act of [his former wife] without ratifying the transaction in its entirety." *Roberts v. Bank of Eufaula*, 20 Ga. App. 221, 226 (3), supra. To hold otherwise would constitute an unjust enrichment to plaintiff since he received all that he had on deposit with C & S by virtue of the property settlement he effected with his former wife. See *Cowen v. Valley Nat. Bank*, 67 Ariz. 210 (193 P2d 918).

2. In his second enumeration of error, plaintiff contends the trial court erred in denying his motion to dismiss Ms. Hyer's third-party "counterclaim" for failure to state a claim.

" '(A) pleading should not be dismissed for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of his claim which would entitle him to relief.' *Skelton v. Skelton*, 251 Ga. 631 (1) (308 SE2d 838) (1983)." *Rothstein v. L. F. Still & Co.*, 181 Ga. App. 113, 114 (2) (351 SE2d 513). In the case sub judice, Counts 1 and 2 of third-party defendant's [Ms. Hyer's] claim assert what appears to be an action for "abusive litigation" based on plaintiff's action against C & S for allegedly mishandling plaintiff's saving's account. See *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414). More specifically, Ms. Hyer alleges that plaintiff's action against C & S is "an improper employment of the civil process . . ." in that it was initiated as a subterfuge to harass her and "deprive her of funds which were determined to belong to her in the previous divorce action." These allegations raise the fundamental question of whether a third-party defendant (Ms. Hyer) can sustain an action for "abusive litigation" against a "claimant" (plaintiff) for asserting an alleged "abusive" derivative action.

Although we find no cases in Georgia which address this issue, we find that the claimant's liability for "abusive litigation" to persons not sued by the claimant is measured by the scope of the risk of damage stemming from the claimant's alleged negligent conduct, i.e., frivolous litigation. See Harper, James & Gray, The Law of Torts 2d § 18.2. In other words, does Ms. Hyer state sufficient facts to support a finding that she was a foreseeable victim of plaintiff's alleged "abusive litigation" against C & S. We find that she does. A jury could reasonably infer that plaintiff's action against C & S for the $8,500 was "substantially frivolous, substantially groundless, or substantially vexatious" litigation and that any damage Ms. Hyer may have sustained in defending C & S's third-party complaint was the proximate result of plaintiff's alleged tortious conduct. Consequently, the trial

court did not err in sustaining Counts 1 and 2 of third-party defendant's (Ms. Hyer's) claim. See *Whitley v. Bank South*, 185 Ga. App. 896, 899 (4) (366 SE2d 182). Compare *Rothstein v. L. F. Still & Co.*, 181 Ga. App. 113, 114 (2), supra. However, in light of our holding in Division 1 of this opinion, there remains no basis to sustain Ms. Hyer's claim for indemnification in Count 3 of her claim. Further, we find that Ms. Hyer's action for contempt in Count 4 of her claim cannot be sustained. See *Atlantic Refining Co. v. Farrar*, 171 Ga. 371, 374, 375 (155 SE 327). Accordingly, the trial court erred in failing to dismiss Counts 3 and 4 of third-party defendant's (Ms. Hyer's) claim.

3. As plaintiff has not supported Enumeration of Error No. 3 by argument or citation of authority, it is deemed abandoned pursuant to Georgia Court of Appeals Rule 15 (c) (2). *Schwartz v. Rennie*, 185 Ga. App. 638 (1) (365 SE2d 159).

4. Lastly, plaintiff contends the trial court erred in failing to dismiss C & S's third-party complaint against Ms. Hyer. This argument is rendered moot in light of our holding in Division 1 of this opinion.

*Judgment affirmed in part and reversed in part. Pope and Benham, JJ., concur.*

DECIDED SEPTEMBER 20, 1988.

*S. Phillip Brown*, for appellant.

*Martha C. Christian, Edward S. Sell III, Brian J. Passante*, for appellees.